VERNON E. MARTENS AND LUCILLE E. MARTENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martens v. Commissioner
Docket No. 39439-87
United States Tax Court
T.C. Memo 1990-42; 1990 Tax Ct. Memo LEXIS 42; 58 T.C.M. (CCH) 1288; T.C.M. (RIA) 90042; January 23, 1990
Vernon E. Martens, Jr., Christian Camenisch II, and William Jordan Temple, for the petitioners. Lindsey D. Stellwagen, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for 1982 and 1983 in the amounts of $ 119,414 and $ 63,370, respectively. After concessions, the issues remaining are: (1) whether petitioners engaged in their construction equipment leasing activity for profit within the meaning of section 183; [1] (2) if so, whether petitioners overstated depreciation deductions in connection with their construction equipment leasing activity; (3) whether the amounts petitioners paid to relatives as compensation exceeded a reasonable allowance for services within the meaning of section 162; (4) whether petitioners are entitled to deduct rental expenses pursuant to sections 162 and 280A; and (5) whether petitioners had unreported income in 1982. FINDINGS OF FACT *44 Some of the facts have been stipulated and are so found. Petitioners resided in Haywood, Virginia at the time their petition was filed. Petitioner Lucille E. Martens is a party to this proceeding solely because she filed a joint return. All references to petitioner are to Vernon E. Martens. Petitioner is a physician. He owns and operates three medical laboratories in the Washington, D.C. metropolitan area. Petitioners reported net profits from the laboratories of $ 548,739.76 for 1982 and $ 340,953.89 for 1983 on their Schedules C on the cash basis. Petitioners operate several farms and reside on one farm in Haywood, Virginia. Petitioners reported net losses from farm operations in the amounts of $ 213,936 for 1982 and $ 191,241.77 for 1983, on Schedules F. In the early to mid-1970's, petitioner began to purchase construction equipment. Prior to purchasing the equipment, petitioner discussed construction equipment with a friend who was a farm equipment distributor and a farmer, and with another acquaintance. Petitioner periodically purchased additional equipment up to and including 1982. From 1973 through 1982, petitioner leased equipment to R. J. Martens Contracting *45 Co., Inc. ("Contracting"). Contracting was wholly owned by petitioners' son, Robert J. Martens. Prior to forming Contracting, Robert had worked in construction as a laborer and then as a supervisor for contractors. From 1973 through 1982, petitioner leased equipment only to Contracting and did not attempt to lease his equipment to any other person or entity. Petitioner and Contracting had only one written agreement pertaining to equipment leasing from 1973 to 1982, a "machinery and equipment lease agreement," which had no stated starting date, but ended by its terms on January 1, 1978. It is unclear when the agreement was entered into. About 1981 Contracting began to experience severe financial difficulties and eventually ceased operations about 1982. During 1982, some of Contracting's construction equipment was sold at auction for the benefit of the creditors of Contracting. Petitioner purchased some of Contracting's equipment both at auction and by assumption of notes. Petitioner did not admit liability for the debts of Contracting, and none of petitioner's property was subject to the claims of Contracting's creditors. In 1982, petitioner incorporated his own construction *46 corporation, Vemart Contracting, Inc. ("Vemart"), in order to gain control over Robert's construction activities. Vemart was wholly owned by petitioner. Robert was general manager of Vemart and was responsible for the day-to-day operations of Vemart. Petitioner transferred some of his equipment to Vemart in 1983. In 1983, petitioner's only equipment leasing customer was Vemart. Petitioner did not attempt to lease his equipment to any person or entity other than Vemart in 1983. Petitioners had no prior experience in construction equipment leasing nor did they prepare any business plans prior to engaging in leasing activities. Petitioners never maintained an office for their construction equipment leasing activity, and they did not hire any employees in connection with the activity. Petitioners did not maintain books and records or a separate bank account for the construction equipment leasing activity. Petitioners reported net losses from the construction equipment leasing activity in the amounts of $ 168,302 for 1982 and $ 80,490 for 1983. Petitioners reported losses from their construction equipment leasing activity for 1977 through 1981 on their Schedules C as follows: *47 $ 25,995.14 in 1977; $ 16,439.98 in 1978; $ 30,984.92 in 1979; $ 33,868.60 in 1980; and $ 110,516 in 1981. Petitioners have never reported a profit or a gain from construction equipment leasing. The equipment purchased was not expected to appreciate, and petitioner has never sold any of his equipment at a gain. Petitioners reported $ 20,920 of income in 1982 and $ 44,260 in income in 1983 on their Schedules C, although they never actually received these amounts. On their 1982 and 1983 returns, petitioners claimed deductions for compensation paid to their children, Vernon Martens, Jr., Gary Martens, Carolyn Zugata, and Elita Martens, and their son-in-law James Tapocik, and respondent disallowed a portion of each amount, as follows: Deductions Claimed
Amount Allowed
1982
1983
1982
1983
Vernon Martens, Jr.
$ 20,090
$ 18,650
$ 5,000
$ 5,000
Gary Martens
13,000
25,200
2,500
600
Carolyn Zugata
4,000
--  2,000
--
Elita Martens
-- 2,000
-- 500
James Tapocik
11,053
1,000
6,527
500
Petitioner issued a Form 1099 to Vernon Jr., Gary, Carolyn, and James for each of the years he claimed a deduction. The full amounts paid *48 to Vernon Jr., Gary, and Elita, and the $ 1,000 paid to James in 1983, have been substantiated. Vernon Jr., a tax attorney, provided legal advice to petitioner regarding tax return preparation, investment, hospital negotiation, and the equipment leasing activity. Petitioners did not keep books and records pertaining to the employment of their relatives, and no employment contracts or agreements were executed. During the years at issue, petitioner rented an apartment in Washington, D.C. Petitioner stayed at the apartment during the week to be closer to his laboratories rather than returning to his home in Haywood. Petitioners claimed deductions for apartment rental in the amounts of $ 4,800 in 1982 and $ 6,000 in 1983 on their Schedule C for the medical laboratory operations. These amounts have been substantiated. Petitioners did not execute a lease for the apartment. Petitioners did not maintain insurance on the apartment. They did not have a separate business telephone or a telephone listing in the directory. The apartment was not used to receive patients, clients, or customers of the medical laboratories. Petitioners received a check from Dr. Lawrence Reese dated December 23, 1981, in *49 the amount of $ 1,000. Petitioners received a check from Biomedical mailed on December 23, 1981, in the amount of $ 4,489. Biomedical's offices from which the check was mailed were located in the same building as petitioner's offices. These checks were income to petitioners. Petitioners did not report either check as income on their 1981 or 1982 tax returns. Petitioner deposited both checks on January 8, 1982. Petitioner had made at least one prior deposit in 1982 and usually deposited his checks in the normal course of business once a week. OPINION The first issue before us is whether petitioners intended to make a profit in the equipment leasing activity. Petitioner owned construction equipment during the years at issue. He leased the equipment to his son's corporation in 1982, and to his own corporation that was managed by his son in 1983. Petitioners reported losses from the equipment leasing activity on their Federal income tax returns for the years at issue. Since beginning their leasing activity in the early 1970's, petitioners have not reported a profit or a gain from their equipment leasing. *50 In order to deduct expenses of an activity pursuant to section 162, the taxpayer must show that he engaged in the activity with an actual and honest objective of making a profit. Sec. 183; sec. 1.183-2(a), Income Tax Regs.; Fuchs v. Commissioner, 83 T.C. 79, 97-98 (1984); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). Although a reasonable expectation of profit is not required, the actual and honest objective of making a profit must be bona fide. Beck v. Commissioner, 85 T.C. 557, 569 (1985). "Profit" in this context means economic profit, independent of tax savings. Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986). Petitioners bear the burden of proving they possessed the requisite profit objective. Rule 142(a), Tax Court Rules of Practice and Procedure. In making this determination, we give more weight to the objective facts than to the taxpayer's mere statements of intent. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), *51 affd. 792 F.2d 1256 (4th Cir. 1986); Surloff v. Commissioner, 81 T.C. 210 (1983). Section 1.183-2(b), Income Tax Regs., provides a list of factors to be used in determining the existence of a taxpayer's profit objective. These factors include: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other activities for profit; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. The list is intended to provide objective standards based upon prior case law. No one factor is determinative. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986). *52 The objective facts of this case do not support petitioner's contention that he entered into his equipment leasing activity with the requisite profit objective. We believe petitioner engaged in the equipment leasing activity to help his son conduct a business and not for profit. First, petitioner did not operate the equipment leasing activity in a businesslike manner. He leased his equipment only to related corporations, and he never made a profit. Importantly, he never sought opportunities to make a profit by leasing the equipment to any corporation that was not managed by his son. Petitioner did not investigate such opportunities, we believe, because his objective was to provide for his son's business. Furthermore, petitioner failed to keep any books or records of the leasing activity. Maintaining complete and accurate books is typically associated with an activity that is carried on in a businesslike manner. Sec. 1.183-2(b)(1), Income Tax Regs. Without such books and records, a taxpayer can hardly know the financial status of his activity or identify *53 potential weaknesses in the financial performance of the activity. He also did not maintain a separate bank account for the activity. Second, petitioner had no experience in the equipment leasing business, and he failed to seek advice from people with such experience. Preparation for an activity by study of accepted business and economic practices, or consultation with those who are experts in the activity, tends to suggest that the taxpayer has a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs. The absence of such preparation tends to show objectives other than for profit. No such preparation or reliance occurred in this case. Petitioner discussed construction equipment with a friend who sold farm machinery, who petitioner thought had a son "in the construction type business," and with an acquaintance who was in construction "in a small way." He also relied on his son's advice. His son had previously worked in construction business as a laborer and supervisor, but he had no experience in leasing construction equipment. There is no evidence in the record *54 that any of these people were knowledgeable or experienced in leasing construction equipment. Moreover, the equipment leasing activity was a new venture for petitioner; he had never engaged in any similar activity. The leasing activity produced losses for the entire time that petitioner participated. Although a series of losses at the start-up stage is expected, start-up losses are not at issue in this case. At issue here are the losses for the taxable years 1982 and 1983. Petitioner testified on cross-examination that he had not made a profit from 1973 through the years at issue. Third, the amount of time petitioner spent in the activity is inconsistent with a profit objective. Although petitioner testified that he spent 8 to 10 hours a week with the leasing activity, he did not present any other evidence of the time spent in the activity and did not articulate what matters consumed his time. Petitioner was a full-time pathologist during the years at issue. In addition, he owned four farms. The evidence does not support a finding that petitioner spent more than an insubstantial amount of time in the equipment leasing activity. Fourth, no potential for appreciation of the *55 assets existed. Petitioner purchased used equipment to lease to Contracting and Vemart. The equipment was not expected to appreciate in value. Petitioner has never sold any of the equipment at a gain. Fifth, although petitioner argued that the losses in 1982 resulted from a depressed market, the leasing activity consistently produced large losses over the entire time petitioner was engaged in the activity. Although the depressed market may have made the loss for that year greater, we do not believe that a depressed market in 1982 caused petitioners to sustain a loss for that year. We see no reason why petitioner would not have experienced losses in 1982 even if the market was not depressed. Sixth, in the face of significant losses over an extended period of time, petitioner did virtually nothing to change his method of operation. Petitioner never attempted to lease the equipment other than to Contracting, his son's corporation, and then to Vemart, his corporation that his son managed. Even after he incorporated Vemart, his son remained in control of day-to-day operations of the equipment petitioner leased. Seventh, petitioner's substantial income from his profession also *56 indicates that the activity was not engaged in for profit but to generate substantial tax benefits. Sec. 1.183-2(b)(8), Income Tax Regs. Petitioner had substantial income from his medical practice during the years at issue. In 1982 and 1983, his income from his medical practice was $ 548,739.76 and $ 340,953.89, respectively. The equipment leasing activity generated substantial tax benefits for petitioners. In 1982 and 1983, petitioners deducted $ 168,302 and $ 80,490, respectively, as net losses from the equipment leasing activity. Finally, we consider whether elements of personal pleasure or recreation were involved in petitioner's activity. Sec. 1.183-2(b)(9), Income Tax Regs. While there is no evidence that leasing construction equipment gave petitioner any pleasure or recreation, his personal desire to support his son's business activities was petitioner's overriding objective for leasing construction equipment. His objective in engaging in the activity was personal rather than for profit. After considering all of the factors of section 1.183-2(b), Income Tax Regs., we hold that petitioner *57 did not engage in the equipment leasing activity for profit. Petitioners, therefore, may deduct expenses associated with equipment leasing only as provided in section 183. Because we hold for respondent on this issue, we need not consider whether petitioners overstated their depreciation deductions for the construction equipment. The next issue we must decide is whether the amounts petitioner paid to his relatives as compensation are deductible pursuant to section 162. Petitioners deducted amounts they paid as compensation to their children and son-in-law in 1982 and 1983. Respondent contends that the amounts exceeded a reasonable allowance for services actually rendered. Section 162 allows the deduction of all ordinary and necessary expenses incurred in a trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." Compensation is deductible only if it is: (1) reasonable in amount, (2) for services actually rendered, and (3) paid or incurred. See sec. 1.162-7(a), Income Tax Regs. Whether *58 amounts paid are reasonable compensation for services rendered is a question of fact to be decided on the facts and circumstances of each case. Eller v. Commissioner, 77 T.C. 934, 962 (1981); Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1155 (1980). Where there is a family relationship, the facts require close scrutiny to determine whether there was in fact a bona fide employer-employee relationship, and whether the payments were made on account of that relationship or the family relationship. The parties stipulated that petitioners actually paid all of the claimed amounts to Vernon Jr., Gary, and Elita and part of the amounts they deducted for payments to James. Petitioners did not prove, however, that amounts greater than those allowed by respondent were deductible compensation paid to the children. Petitioner did not keep any books or records of the work the children performed or the compensation he paid the children. Except for Vernon Jr., the children petitioner paid did not testify at trial. The only evidence of amounts paid to Gary, Carolyn, Elita, and James in the record is the uncorroborated testimony of petitioner. *59 We hold that respondent correctly determined the deductible amounts paid as salary. There are also inconsistencies in the evidence on this issue. Petitioner deducted amounts for compensation paid to Gary and James on both Schedule C and Schedule F (Farm Income and Expenses). Petitioner testified, however, that Gary and James worked only on his farm. There is no support for the Schedule C deductions. Petitioner testified that Carolyn developed accounts for his medical business for a 10 to 15 percent commission. He also testified that the $ 4,000 he deducted in 1982 was for work she performed in 1981, 1982, and 1983. The evidence does not support petitioner's deduction of $ 4,000 in 1982. Further, petitioner testified that Elita was a bookkeeper for the laboratories, but he did not issue a Form 1099 for her as he had for Vernon Jr., Gary, Carolyn, and James. Moreover, there are no canceled checks or other proof of payment for the amounts petitioner paid James and Carolyn in 1982. We also believe that although the evidence does support petitioners' claim that Vernon Jr. actually rendered services to petitioner for compensation in the amounts claimed, the evidence does not *60 support a deduction greater than allowed by respondent. Vernon Jr. testified at trial that he provided advice to petitioner on income tax preparation, investments, hospital contract negotiation, and the equipment leasing activity. Any amounts petitioner paid for advice regarding the equipment leasing activity are not deductible. Sec. 262. The record does not indicate how much or what proportion of Vernon Jr.'s legal services were for the equipment leasing activity. We may estimate the amount petitioner paid Vernon for his legal advice not relating to the equipment leasing activity even though the evidence in the record does not allow us to determine the exact amount, "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Petitioner has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. In this family setting, we also examine the evidence closely. We estimate that under the facts and circumstances of this case, the amount petitioner could properly deduct for payments to Vernon Jr. for legal services is no more than the amount respondent allowed. *61 Petitioner and Vernon Jr. destroyed any records of the services provided. At trial, Vernon Jr. testified that he submitted bills to petitioner for legal services performed and that he kept records, but that he no longer had any of these records. Vernon Jr. is a tax attorney and should have known not to throw away supporting documentation of his own income and his parents' deductions if it existed. In addition, although petitioner deducted some of Vernon Jr.'s fee on the Schedule F (no more than $ 2,000 per year), the evidence does not support any deduction on Schedule F for payments for Vernon Jr.'s advice. The evidence does not support a deduction greater than that allowed by respondent, $ 5,000 in 1982 and $ 5,000 in 1983. The next issue before us is whether petitioners may deduct rental payments pursuant to sections 162 and 280A. Petitioner resided in Haywood, Virginia and rented an apartment in Washington, D.C. where he stayed one or two nights a week when conducting business at his laboratories. Petitioner deducted the rental for the Washington, D.C. apartment on his Schedule C. *62 Section 280A provides generally that a taxpayer's expenses in connection with the use of a residence are not deductible. Exceptions to this rule, as relevant to this case, are provided when the taxpayer uses a portion of the residence exclusively and on a regular basis as a principal place of business, or as a place for meeting with patients, clients, or customers in the normal course of business. Sec. 280A(c)(1). On brief, petitioner stated that one of the issues was whether the home office deduction was allowable, but presented no argument to support the deductions. Petitioner also conceded 34 percent of the amount he claimed as a home office deduction on brief. Petitioner failed to establish that he used a portion of the apartment "exclusively" and on a "regular basis" in his medical practice. He testified vaguely that he kept records from the hospitals and the construction business at the apartment, and used the apartment for a central business location. This general testimony does not satisfy petitioners' burden of proving exclusive use of the apartment in his medical practice. In any event, petitioner has not met his burden of proving that he comes within one of the exceptions *63 of 280A. He did not meet with patients, clients, or customers in the apartment. Petitioner also did not present any evidence that the apartment was his principal place of business. We hold that petitioners did not satisfy their burden of proving entitlement to the rental expense deduction. The final issue we must decide is whether petitioners failed to report income in 1982. Petitioners deposited two checks in the amounts of $ 1,000 and $ 4,489 into their checking account on January 8, 1982. The check for $ 1,000 was dated December 23, 1981. The check for $ 4,489 was mailed to petitioner on December 23, 1981. Petitioners did not report the amounts as income in either 1981 or 1982. Petitioners argue that they received the checks in 1981. Respondent contends that petitioners received the checks in 1982. Because petitioners are cash method taxpayers, the correct year for inclusion in income is the year of actual or constructive receipt. Secs. 1.446-1(c)(1)(i) and 1.451-1(a), Income Tax Regs.; Kahler v. Commissioner, 18 T.C. 31 (1952). Petitioners have the burden of proof. Rule 142(a). Petitioner testified that he received the checks in 1981. Petitioner *64 also testified that he received a major portion of his gross receipts from the medical labs by check, and that he usually deposited his checks in the normal course of business once a week. In addition, petitioner testified that he had made a deposit in 1982 prior to depositing the checks at issue. Petitioner offered no explanation of why the checks were deposited out of order of receipt or why the amounts were not reported in income in 1981. With respect to the $ 1,000 check, the parties stipulated only that the check was dated December 23, 1981. We hold that petitioners have not met their burden of proving that they received the check for $ 1,000 in 1981. Petitioner could not remember when the check was mailed, and the parties did not stipulate the mailing date. Petitioner offered no evidence to prove the date the check was mailed. The parties stipulated that the check for $ 4,489 was mailed to petitioner on December 23, 1981. The check was mailed from a corporation located in the same building as petitioner's laboratory. Based on the mailing date, on the fact that the check was mailed from and to locations in the same building, and on a normal delivery time for such a mailing, *65 we conclude that petitioners received the check in 1981. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated.↩